# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS CZERNIAK and CAROL J. CZERNIAK, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) No. 15-CV-06473 |
| v. | )<br>) Judge John J. Tharp, Jr. |
| SERVIS ONE, INC., d/b/a BSI FINANCIAL SERVICES and VENTURES TRUST 2013-I-HR by MCM CAPITAL PARTNERS LLC, Trustee | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants BSI Financial Services and Ventures Trust have moved to dismiss Plaintiff Thomas and Carol Czerniaks' complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). They object that the Fair Debt Collection Practices Act does not apply to them, that an element of a Telephone Consumer Protection Act claim has not been adequately pled, and that other causes of action have not been alleged with sufficient specificity. Because the Czerniaks' allegations are sufficient as to all counts, the motion to dismiss is denied.

## BACKGROUND[1]

Thomas and Carol Czerniak are a married couple living in Chicago, Illinois. Compl. ¶ 4. On April 3, 2006, they obtained a mortgage from Mortgage Electronic Systems, Inc. ("MERS") on their home in Chicago. *Id*. at ¶ 8. At some point later, they defaulted on the mortgage (exactly when is unclear) and on September 26, 2013, they filed for bankruptcy. *Id*. at ¶ 10. On October

---

[1] For the purposes of this motion to dismiss, all facts in the complaint are taken as true and all inferences are drawn in favor of the plaintiff. *See Tamayo v. Blagojevich,* 526 F.3d 1074, 1078 (7th Cir. 2008).

15, 2013, MERS assigned the Czerniaks' mortgage to CitiMortgage, Inc., and the Czerniaks listed CitiMortgage as a secured creditor on their Schedule D bankruptcy forms. *Id*. at ¶ 11-12. CitiMortgage was provided with notice of the Czerniak's bankruptcy but chose not to attend the November 12, 2013 creditor meeting. *Id*. at ¶ 15-16. The Czerniaks submitted a modified Chapter 13 plan on November 13, 2013, in which they agreed to surrender their home in full satisfaction of their mortgage. *Id.* at ¶ 17-18. CitiMortgage did not object, and the Czerniak's plan was approved on December 9, 2013. *Id*. at ¶ 19.

CitiMortgage moved to be relieved of the automatic bankruptcy stay on February 24, 2014, which was granted the same day. Compl. ¶ 21-22. The motion acknowledged the intent to surrender the property and appears to have been understood as an effort to pursue a quick foreclosure. *See id.* at ¶ 21. The order allowed CitiMortgage, "its principals, agents, successors and/or assigns" to "pursue all non bankruptcy [sic] remedies and work out options as to the property commonly known as 6236 W. 64th Street, Chicago, IL." *See In re Czerniak*, No. 13-37976, Dkt. 26 (N.D. Ill. Bnkr. Feb. 25, 2014). The Czerniaks "fully performed their duties as set forth in their Confirmed Chapter 13 Plan" and the bankruptcy court entered a discharge order on April 14, 2014. Compl. ¶ 23-24.

The problems began the following year, when on January 8, 2015, defendant BSI Financial Services sent the Czerniaks a letter informing them that their (former) mortgage loan had been sold to defendant Ventures Trusts on December 18, 2014. *Id*. at ¶ 32-33. BSI's letter did not identify who the prior creditor had been on the loan. *Id*. at ¶ 34. On January 28, 2015, the Czerniaks received a statement stating that $14,096.57 was due in four days, that they owed over $224,000 in principal, and that they were 484 days delinquent on their home, which could result in foreclosure. *Id*. at ¶ 35. Two days later, Thomas received at least four calls regarding the

mortgage on his cell phone while Carol received at least one on her cell phone. *Id*. at ¶ 36-37. On February 2, 2015, they received a letter from BSI stating "the servicing of your mortgage loan is being transferred, effective January 20, 2015" and that the new servicer would begin collecting from them. *Id*. at ¶ 39. The same day, Thomas received at least three calls on his cell phone from BSI regarding the debt. *Id*. at ¶ 42. Two days later (on February 4), the Czerniaks received another letter, indicating they owed over $252,000 and that they had thirty days to dispute the validity of their debt. *Id*. at ¶ 45-46.

On February 11, Thomas Czerniak did just that, sending a letter disputing the debt and explaining that the mortgage had been discharged in bankruptcy (even going so far as to include a copy of the discharge order from the bankruptcy court). Compl. ¶ 47-48. BSI received the dispute letter, but called Thomas on his cell phone twice on February 19 regarding the debt. *Id*. at ¶ 49. Without obtaining any debt verification, BSI sent the Czerniaks another letter on February 24, which identified itself as an attempt to collect a debt regarding home insurance. *Id*. at ¶ 50-51. On February 27, BSI sent a mortgage statement stating the Czerniaks owed $20,126.98 in two days and had outstanding principal of over $224,000 which could lead to foreclosure. *Id*. at ¶ 52. They received a similar statement on March 18. *Id*. at ¶ 55. BSI also continued to call Thomas, three times on February 27 and once on March 11, April 13, and June 11. *Id.* at ¶ 53, 54, 56, 57. The Czerniaks, after six months of "emotional distress and mental anguish" and being "led to believe that their bankruptcy had no legal effect and that they were still obligated on the subject debt," filed this lawsuit on July 24, 2015 alleging violations of the Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. § 1692), the Telephone Consumer Protection Act ("TCPA," 47 U.S.C. § 227), the bankruptcy discharge injunction (11 U.S.C. § 524), and the Illinois Consumer Fraud Act ("ICFA," 815 ILCS 505/1(e)). Compl. ¶ 62-63.

**DISCUSSION**

On a motion to dismiss, a plaintiff need only allege the facts that provide "the grounds of his entitlement to relief," and does not need "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The defendants raise a number of arguments as to why this case should be dismissed under Fed. R. Civ. P. 12(b)(6). First, they argue that the FDCPA does not apply to BSI because it is not a debt collector. Second, they argue that the TCPA claims fail because the use of an automatic telephone dialing system ("ATDS") was not adequately alleged. Third, they argue the claims that the bankruptcy discharge injunction was violated do not provide BSI "fair notice of the grounds upon which the claims against it are based." Def.'s Mem. at 12-13, ECF No. 12. Similarly, they allege the ICFA claim must be dismissed because it "leaves the Defendant and the court unable to ascertain the nature of Plaintiffs' claims." *Id*. at 14. As discussed below, none of these arguments are meritorious, and therefore the motion to dismiss is denied.

**I. The FDCPA Applies to BSI**

Initially, BSI argues that the Czerniak's FDCPA claim must fail because BSI is not a "debt collector" and therefore not subject to the statute at all. A "debt collector" is defined in the statute as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another" but does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity. . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). BSI

4

asserts that the loan was not "in default" because the bankruptcy court had already discharged personal liability on the debt. *See* Def.'s Mot. at 8.

However, the Seventh Circuit has created an exception for the "in default" rule where the "parties to the assignment are mistaken about the true status" of the loan. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 539. In that case, a mortgage holder's records indicated that the loan was in default although the debtors were in fact current. *See id.* at 535-36. The holder committed various FDCPA violations, but later claimed it could not be held liable for them because the debt was not in fact in default. The Seventh Circuit held such an escape hatch made "little sense" and would create "little incentive to acquire accurate information about the true status of the loan because, in the context of the mistake in this case, its ignorance leaves it free form the statute's requirements." *Id*. at 538.

The situation is the same here. BSI incorrectly treated the Czerniaks' mortgage as in default, even though they no longer owed anything because the debt had been discharged in bankruptcy. To exempt BSI from liability for the actions it took while trying to collect a debt it believed it was owed would encourage unscrupulous behavior such as attempts to collect on discharged mortgages. Not only are these tactics as oppressive and distressing as when they are used on actual debtors, they are perhaps even more so when the alleged debtor has already gone through the crucible of bankruptcy. Another court of this district has already ruled on this same argument by BSI on substantially similar facts and found that BSI is still subject to the FDCPA. *See Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *3 (N.D. Ill. Dec. 15, 2015). This Court agrees and finds BSI, by asserting to the Czerniaks that the debt was in default and attempting to collect it, is still subject to the FDCPA as a debt collector despite the actual discharge of the debt in bankruptcy.

**II. Use of an Autodialer or ATDS Has Been Adequately Alleged**

Next, BSI argues that the Czerniaks have failed to state a claim under the TCPA for the use of an automatic telephone dialing system ("autodialer" or "ATDS"). The Czerniaks allege in the complaint that "BSI violated the TCPA by placing a minimum of fifteen calls to Thomas's cell phone using an ATDS without his consent." Compl. ¶ 82. The Complaint uses the phrase "using an ATDS" several times. *See id.* at ¶ 86, 90, 94. The TCPA prohibits the making of calls "using any automatic telephone dialing system" except under certain conditions not relevant here. 47 U.S.C. § 227(b)(1)(A).

The courts of this district have divided on how use of an autodialer must be alleged in order to survive a 12(b)(6) motion. *See Izsak v. Draftkings, Inc.*, No. 14-CV-07952, 2016 WL 3227299, at *3 (N.D. Ill. June 13, 2016) (collecting cases). This Court sides with those finding that allegations of the use of an autodialer are sufficient at the motion to dismiss stage. *See, e.g., Torres v. Nat'l Enter. Sys., Inc.*, No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012). As the *Torres* court noted, discovery is typically necessary for the plaintiff to obtain the facts necessary to demonstrate an autodialer was used. Furthermore, there are often factual predicates of claims that need not be alleged in great detail. For example, BSI does not object to the Czerniaks' allegations that they were called on their cell phones, even though they do not further explain why they believe they meet that statutory requirement. Sometimes a few simple words are enough to state a part of a claim, and here the use of an autodialer is one of those simple facts that will suffice at the motion to dismiss stage. "The Court does not find it necessary for [Plaintiff] to describe the calls in minute detail in his complaint (how long was the pause? Did he hear a click? Just how generic were these "prerecorded robocalls?") to allege plausibly

that an autodialer was used." *Stamer v. Seas & Assocs., LLC*, No. 15-CV-08277, 2017 WL 279674, at *3 (N.D. Ill. Jan. 13, 2017).

### III. The Bankruptcy Discharge Injunction Claim is Sufficient

The Czerniaks further allege that BSI violated the bankruptcy discharge order, which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The Czerniaks allege BSI, "[n]otwithstanding having actual notice of Plaintiffs' bankruptcy," continued to attempt to collect on the debt in violation of the order. Compl. ¶ 99. BSI attempts to argue a confusing array of reasons why "Plaintiff's Complaint fails to describe the claim in sufficient detail to give BSI fair notice of what the claim is and the grounds on which it rests." Def.'s Mem. at 12. As an initial matter, the Complaint clearly gives sufficient notice of the claim – it alleges that BSI engaged in a variety of calls and letter to collect a debt which had been discharged in bankruptcy in violation of the stated law. Those calls and letters are identified by date and contents, as is the statute under which they bring their claim. BSI has plenty of notice as to the basis of the Czerniaks' claim and argument to the contrary is blatantly frivolous.

The Court takes BSI's substantive argument to have several parts: first, that it did not violate the injunction because the bankruptcy court had granted CitiMortgage's request for relief from the stay. Second, it provided boilerplate bankruptcy disclaimers explaining that it did not intend to violate any bankruptcy stay that might be in effect. Third, that the plaintiffs failed to sufficiently allege the content of the various calls and letters. None of these arguments holds water.

First, the bankruptcy court granted CitiMortgage relief from the stay "*as to the property*" subject to the mortgage. *See In re Czerniak*, No. 13-37976, Dkt. 26 (N.D. Ill. Bnkr. Feb. 25, 2014). As at least one decision against BSI has previously noted, the bankruptcy injunction protects plaintiffs from claims regarding "personal liability of the debtor" and a relief order as to a property does not allow a debt collector to go after a debtor personally. *See* 11 U.S.C. § 524(a)(2); *Ananthapadmanabhan*, 2015 WL 8780579, at *4. The Complaint clearly indicates that BSI attempted to collect the discharged debt from the Czerniaks personally rather than taking an action against the property, which states a plausible violation of the bankruptcy discharge injunction.

Second, BSI concedes that not all of the material sent to the plaintiff contained the bankruptcy disclaimers, so even if those disclaimers did prevent liability based on some of BSI's communications, the plaintiffs would still have stated a claim. *See* Def.'s Mem. at 12 ("nearly all of the written correspondence" contained disclaimers). Furthermore, it is not clear that BSI made any disclosures during its phone conversations with the Czerniaks. *See Freeman v. Ocwen Loan Servicing, Inc.*, No. 15 C 11888, 2016 WL 3476681, at *6 (N.D. Ill. June 27, 2016) (declining to dismiss bankruptcy injunction claim where court could not determine whether disclaimers were given during calls). Most importantly, BSI has cited no law suggesting that bankruptcy disclaimers eliminate liability under a bankruptcy injunction when the collection efforts are made against individuals in their personal capacity. Even if such disclaimers were effective, the disclaimers were not made during every interaction with the Czerniaks, so BSI could plausibly be liable regardless for at least some of the relevant interactions.

Finally, BSI alleges that the Czerniaks have not alleged the content of the communications in sufficient detail. This argument also falls well short of the mark. First, to

8

require a plaintiff who has received dozens of calls from a defendant regarding a debt to describe them in detail demands more of a plaintiff than do the federal rules that govern pleading standards. The Supreme Court has said that a plaintiff "does not need detailed factual allegations," and a statement of when the calls took place and a general description of what they were about is sufficient. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Discovery is the proper time for the parties to determine the exact contents of the phone calls. *See Freeman*, 2016 WL 3476681, at *6 ("the contents of the written communications sent to Freeman and the purpose and content of the telephone calls must be explored in discovery"). Second, the Czerniaks provided copies of several of the letters as attachments to their complaint, so the suggestion that the contents of the letters have not been sufficiently revealed is meritless.

**IV. The ICFA Claim is Sufficient**

Finally, BSI argues that the Czerniaks have failed to sufficiently allege unfairness under the ICFA. Au contraire. The Complaint states that BSI's attempts to collect from the Czerniaks were "continuous and misleading," that BSI attempted "to induce the Czerniaks into making payments on a uncollectible debt," and that BSI "bullied Plaintiffs into submission with perpetual unfair and deceptive conduct through lies, harassment, and deception regarding the collectability of the subject debt, and by ignoring their requests for the communications to stop." Compl ¶ 113-117. The complaint's description of BSI's conduct is more than sufficient to convey the nature of what is alleged to have been "unfair" conduct.

In its reply, BSI retreats from its hyperbole-laden assertion that "[t]he staggering height of the overstatements in Plaintiffs' Complaint leave Defendant without fair notice of what the claim is and the grounds on which it rests," Def.'s Mem. at 14 (internal quotation marks omitted), and instead argues that an elevated fraud pleading standard is required and that the

Czerniaks failed to allege that BSI "intended that Plaintiffs rely on the deceptive practice or act." Def.'s Reply at 9, ECF No. 19.

But "intent to deceive is not a required element of a claim under the ICFA." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). The Complaint clearly states that it is seeking to establish unfairness rather than fraud, and is therefore not subject to heightened pleading standards. *See Freeman*, 2016 WL 3476681, at *7. In fact, the *Freeman* court found a claim was stated under the ICFA with almost identical facts. *See id.* at * 9. As in *Freeman*, the facts alleged in the complaint detail a series of acts by BSI that are unethical, oppressive, and unscrupulous (exactly what the IFCA prohibits). *See Sadowski v. Med1 Online, LLC,* No. 07 C 2973, 2008 WL 2224892, at *6 (N.D. Ill. May 27, 2008) (listing components of IFCA claim). The Complaint alleges that BSI sent numerous letters and made several phone calls attempting to collect on a debt that had long since been discharged, even after the Czerniaks informed BSI that their debt had been discharged in bankruptcy. *See* Compl. ¶ 52. BSI's efforts led them to believe that "their bankruptcy had no legal effect and that they were still obligated" to pay BSI. *See id.* at ¶ 63. If BSI did in fact know it was trying to collect on a nonexistent debt but still wrote letters describing sums due and making phone calls to induce the Czerniaks to pay money, those actions are sufficiently unfair to state a claim under the ICFA. *See Blanton v. Roundpoint Mortg. Servicing Corp.*, No. 15 C 3156, 2016 WL 3653577, at *9 (N.D. Ill. July 7, 2016) (ICFA claim stated where "the second amended complaint alleges that [Defendant] misrepresented the status of her debt and previous payments in an attempt to force her to dismiss her state court action").

\*   \*   \*

The Czerniaks have sufficiently alleged their FDCPA, TCPA, bankruptcy discharge injunction, and ICFA claims. Therefore, the motion to dismiss is denied.

Dated: March 31, 2017

John J. Tharp, Jr.
United States District Judge